NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

7th Circuit Court-Rochester Family Division
No. 2020-0009


IN THE MATTER OF JONATHAN MERRILL AND LEA MERRILL


Submitted: November 19, 2020
Opinion Issued: April 20, 2021


John A. Macoul, of Salem, by brief, for the petitioner.

MacMillan Law Offices, of Bradford, Massachusetts (Thomas K. MacMillan on the brief), for the respondent.


HANTZ MARCONI, J. The petitioner, Jonathan Merrill, appeals a final divorce decree from the Circuit Court (Foley, J.), arguing that the trial court erred by: (1) including the assets of a spendthrift trust in the marital estate; (2) excluding from the marital estate assets owned by the respondent, Lea Merrill, and her mother as joint tenants; and (3) incorporating parts of the temporary order into the final decree. We affirm in part, reverse in part, vacate in part, and remand for further proceedings.


I


The parties married on February 14, 2005. During the marriage, the petitioner worked at George Merrill & Son (GEM), his family's excavation business, and KEM Realty (KEM), his family's horse farm. The petitioner owns a 24.5% interest in GEM and is the beneficiary of the JGM 2012 Trust, which owns another 20.5% interest in GEM. He also owns a 23.75% interest in KEM.

The petitioner's salary from GEM was approximately $190,000 per year. In 2009, the parties moved into the house located on the Merrill family's horse farm, where they lived rent free. The respondent was a homemaker by agreement of the parties. On June 19, 2017, the petitioner filed a petition for divorce.

On May 16, 2018, the Circuit Court (<u>Stephen</u>, J.) issued a temporary order requiring the petitioner to pay alimony, child support, and the respondent's medical insurance expenses. In addition, the petitioner was required to pay the mortgage, taxes, and insurance on the parties' Hampton Beach condominium as well as the respondent's credit card debt accrued before the date of his filing for divorce, the cost of installing carpeting at the Hampton Beach condominium, and $7,500 for the respondent's legal and living expenses. The next day, the trial court found the respondent in contempt of its pretrial non-hypothecation order for conveying her interest in her mother's condominium to her mother, potentially placing it outside the marital estate. On September 11, 2018, the case was transferred to the Family Division Complex Docket, and the case went to trial for four days beginning on June 3, 2019. An additional four days were required, and the trial was continued until October 22, 2019. The trial concluded on October 25, 2019.

On November 11, 2019, the Circuit Court (<u>Foley</u>, J.) issued a final divorce decree. The trial court concluded that the petitioner's shares of his family businesses, as well as the shares of GEM owned by the JGM 2012 Trust, belonged in the marital estate, but it excluded the respondent's ownership interest in her mother's condominium. The trial court awarded the respondent ownership of the Hampton Beach condominium and the petitioner full ownership of his shares of his family businesses; however, the petitioner was ordered to pay the respondent $286,165.50 in order to equalize the distribution of the marital estate. The petitioner was further ordered to pay $3,524 per month in alimony for eight years. The trial court also incorporated part of the temporary order into its final decree, requiring the petitioner to pay the respondent $7,500, assume $13,964.43 of the respondent's credit card debt, and cover the cost of installing carpeting in the Hampton Beach condominium. On January 5, 2020, the petitioner filed a timely appeal in this court.

II

We review a trial court's determination of what assets constitute marital property <u>de novo</u>. <u>In the Matter of Cohen & Richards</u>, 172 N.H. 78, 83 (2019). Marital property includes "all tangible and intangible property and assets . . . whether title to the property is held in the name of either or both parties." <u>Id</u>. at 84; <u>see also</u> RSA 458:16-a, I (2018). However, "[t]o the extent that a beneficiary's interest in a trust is subject to a spendthrift provision, the beneficiary's interest is not [marital] property for purposes of RSA 458:16-a, I." RSA 564-B:5-502(e)(1) (2019). All marital property is subject to equitable

division.  Cohen, 172 N.H. at 83; see also RSA 458:16-a, II (2018) (requiring courts to "presume that an equal division is an equitable distribution of property" unless "an equal division would not be appropriate or equitable" under the circumstances).

A

We begin by addressing the petitioner's argument that assets owned by the JGM 2012 Trust should be excluded from the marital estate because the trust is subject to a spendthrift provision.  The trial court included in the marital estate approximately $292,000 of GEM shares that were owned by the JGM 2012 Trust.  The petitioner contends that this was error because the JGM 2012 Trust is subject to a spendthrift provision, and RSA 564-B:5-502 explicitly excludes property owned by a spendthrift trust from the marital estate.  The respondent contends that this argument is not preserved for our review because the petitioner raised it for the first time in his second motion for reconsideration and had at least three earlier opportunities to present this argument to the trial court.  We need not decide whether the argument is preserved, because we conclude that the trial court committed plain error.  See Sup. Ct. R. 16-A.

The plain error rule is an exception to the contemporaneous objection rule that allows us to review an unpreserved error on appeal if the error is plain and affects substantial rights.  See State v. Russell, 159 N.H. 475, 493 (2009); see also Stachulski v. Apple New England, LLC, 171 N.H. 158, 171 (2018).  We apply this rule sparingly and only in circumstances in which a miscarriage of justice would otherwise result.  Stachulski, 171 N.H. at 171.  In order to reverse a trial court decision under the plain error rule: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity, or public reputation of judicial proceedings.  Id.  We conclude that the trial court's decision to include in the marital estate assets owned by the JGM 2012 Trust constituted plain error.

In order to determine whether the trial court's inclusion of trust assets in the marital estate constituted plain error, we first look to the trust instrument itself to see if the trust was subject to a spendthrift provision.  The interpretation of a trust is a question of law subject to de novo review.  See Hodges v. Johnson, 170 N.H. 470, 480 (2017).  It is well settled that our courts have shown signal regard for the intention of a settlor of a trust.  Id. at 481. "The intent that matters for our purpose is the intent of the settlor when the trust was created."  Id. (citation omitted).  To determine the intent of the settlor, our first step is to examine the language according to its plain and ordinary meaning.  Id.  We do not consider words or phrases in isolation, but within the context of the trust instrument as a whole.  Id.  If a trust instrument

3

is unambiguous, we may not consider extrinsic evidence to vary or contradict the express terms of the trust instrument.  See id.; see also In re Pack Monadnock, 147 N.H. 419, 423 (2002).

A trust is subject to a spendthrift provision only if it "restrains both voluntary and involuntary transfers of a beneficiary's interest."  RSA 564-B:5-502(a) (2019).  The petitioner contends that the JGM 2012 Trust is subject to a spendthrift provision.  The trust instrument contains the following language:

> The interest of each beneficiary, and all payments of income or principal to be made to or for any beneficiary, shall be free from interference or control by any creditor or spouse (or divorced former spouse) of the beneficiary and shall not be capable of anticipation or assignment by the beneficiary.

The respondent contends that this language falls short of the statutory requirements regarding the creation of a spendthrift trust because it does not prohibit a beneficiary transfer.  We disagree.  It is clear from the plain language of the trust instrument that this provision creates a valid spendthrift trust.  See RSA 564-B:5-502(a).  It expressly prohibits all involuntary transfers of trust assets by prohibiting any interference or control of those assets by creditors, spouses, and former spouses.  In addition, this clause also prohibits any voluntary transfer of trust assets by preventing beneficiaries from assigning their rights under the trust instrument.  Because we conclude that this provision restricts both voluntary and involuntary transfers of the beneficiary's interest, we conclude that the spendthrift trust provision is valid.

In this case, all four prongs of the plain error rule have been met.  RSA 564-B:5-502 is clear: a beneficiary's interest in a trust that is subject to a spendthrift provision is not marital property.  RSA 564-B:5-502(e)(1).  Furthermore, the trial court's inclusion of the trust assets substantially affects the petitioner's rights and seriously affects the fairness and integrity of the judicial proceedings.  Stachulski, 171 N.H. at 171.  The trial court's inclusion of trust assets erroneously increased the value of the marital estate by nearly $292,000, which otherwise belongs to the JGM 2012 Trust for the benefit of the petitioner.  For these reasons, we conclude that the trial court's error was plain, and that the JGM 2012 Trust assets are not marital property.

B

Next, we turn to the petitioner's contention that the trial court erred by failing to include in the marital estate the respondent's joint interest in her mother's condominium.  Contrary to the petitioner's argument, this case does not turn on the existence of a valid joint tenancy between the respondent and her mother at the time the petitioner filed for divorce.  Instead, the relevant

4

question is whether the respondent's mother had made a completed inter vivos gift of an interest in her condominium to the respondent by the time that the petitioner filed for divorce. An inter vivos gift is "a voluntary transfer of property by one living person to another living person, without any valuable consideration, which is perfected and becomes absolute during the lifetime of the parties." 38 Am. Jur. 2d Gifts § 6 (2021). In order to complete an inter vivos gift, there must be donative intent on the part of the donor, delivery, and acceptance by the donee. Filip v. Bogdan, 123 N.H. 98, 101 (1983); Blasdel v. Locke, 52 N.H. 238, 243 (1872).

The trial court determined that the respondent's mother's condominium was conveyed by deed to the respondent and her mother as joint tenants on May 5, 2017. A corrective deed was then executed on June 21, 2017, again listing the respondent and her mother as joint tenants. On August 23, 2017, approximately three weeks after the respondent was served the divorce petition, the respondent and her mother conveyed the respondent's interest in the condominium to her mother alone. The trial court further found that the respondent was unaware that her name was on the deed to her mother's condominium; took no part in the purchase or closing of the property; did not live in or take possession of the property; and did not spend marital funds to purchase the property. Even assuming that the respondent's mother had delivered the inter vivos gift with donative intent, the facts do not support a finding that the respondent ever accepted her mother's gift. See Bradley v. State, 100 N.H. 232, 236 (1956) (observing that a gift is "wholly inoperative unless accepted by the donee" (quotation omitted)). Under these circumstances, the respondent "had no real interest in the property" at the time the petitioner filed for divorce because she could not accept a gift of which she did not know. See Barter v. Stewart, 117 N.H. 776, 779 (1977) (concluding husband had "no real interest" in joint tenancy because, although wife conveyed property to him for estate planning purposes, she lacked present donative intent to make inter vivos gift). Accordingly, we conclude that the respondent's mother's condominium is not marital property.

III

For the foregoing reasons, we affirm the trial court's exclusion of the respondent's mother's condominium from the marital estate and reverse the trial court's inclusion of JGM 2012 Trust assets in the marital estate. Because we conclude that the trial court erred by including JGM 2012 Trust assets in the marital estate, we vacate the trial court's property and alimony awards. See RSA 458:16-a, II; RSA 458:19, IV(b) (2018) (requiring the trial court to consider "the property awarded under RSA 458:16-a" in determining amount and duration of alimony). In so doing, we are vacating the trial court's incorporation of the temporary order into its final decree because the trial court did not consider these expenses in isolation, but rather considered these

5

figures in its equitable division of the marital estate.  Cf. In the Matter of Hampers & Hampers, 154 N.H. 275, 287-88 (2006).  In light of our decision, we do not need to address the petitioner's remaining arguments.

Affirmed in part; reversed in part; vacated in part; and remanded.

HICKS and BASSETT, JJ., concurred.